UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BILLIE JEAN BROWN** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 11-2919** |
| **MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION** | * | **SECTION: "S"(5)** |

### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motion for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Disability Insurance Benefits ("DIB"). (Rec. docs. 14, 15).

Billie Jean Brown, plaintiff herein, filed the subject application for DIB on April 29, 2009.[1]/ In a Disability Report that appears in the record, the onset date of plaintiff's

---

[1]/ Although the application was identified as Exhibit No. 1D on the "Court Transcript Index" from the proceedings below, the application itself does not appear in the administrative record. (Tr. pp. 103-105). What is identified on the Index as the application is actually the Administrations's "Reporting Responsibilities for Disability Insurance Benefits" form.(Id.).

disability was reported as March 31, 2006 and the conditions resulting in her inability to work were identified as breast cancer in remission, high blood pressure, an irregular heart beat, hearing loss, fibromyalgia, soreness over the entire body, lack of cartilage in the knees, a pinched nerve in the neck, numbness on the right side of the face, pain down the right arm and upper back, and depression. (Tr. pp. 113-122).[2]/ Plaintiff's application for DIB was denied at the initial level of the Commissioner's administrative review process on September 24, 2009. (Tr. pp. 56-59). Pursuant to plaintiff's request, a hearing <u>de</u> <u>novo</u> before an Administrative Law Judge ("ALJ") went forward on May 12, 2010 at which plaintiff, who was represented by counsel, and a Vocational Expert ("VE") testified. (Tr. pp. 60-61, 5-31). On June 8, 2010, the ALJ issued a written decision in which he concluded that

---

[2]/ According to a second Disability Report that appears in the record, plaintiff had filed a previous application for DIB that was denied at the initial level of the Commissioner's administrative review process on February 26, 2008 and was not appealed further. (Tr. pp. 109-112). As a result, the February 26, 2008 denial became the final, binding decision of the Commissioner, 20 C.F.R. §404.905, and adjudicated plaintiff's entitlement to DIB through the latter date. That previous application is not now before the Court and administrative <u>res judicata</u> deprives the Court of jurisdiction to review it. <u>Califano v. Sanders</u>, 430 U.S. 99, 107-09, 97 S.Ct. 980, 985-86 (1977); <u>Muse v. Sullivan</u>, 925 F.2d 785, 787 n.1 (5th Cir. 1991). Thus, the relevant time period at issue is from February 27, 2008 until December 31, 2011 when plaintiff's disability insured status expired.

plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 35-55). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (T. pp. 1-4). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In her cross-motion for summary judgment, plaintiff frames the issue for judicial review as follows:

> 1. [t]he decision rejects the findings of the treating physician as to plaintiff's functional capacity and substitutes the ALJ's opinion with no medical testimony supporting this conclusion.
> (Rec. doc. 14-2, p.1).

Relevant to the issue to be decided by the Court are the following findings that were made by the ALJ:

> 1. [t]he claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. [t]he claimant has not engaged in substantial gainful activity since March 31, 2006, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3. [t]he claimant has the following severe impairments: Generalized Anxiety Disorder, Depressive Disorder, not otherwise specified, History of Status Post Breast Cancer in Remission, History of Fibromyalgia, and History of Degenerative Joint Disease of the Knees (20 CFR 404.1520(c)).

4. [t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, generally defined in 20 CFR 404.1567(c) as work requiring lifting/carrying no more than 25 pounds frequently and 50 pounds occasionally, and standing/walking about 6 hours [] in an 8 hour workday, except the claimant is limited to understanding, remembering, and carry[ing] out simple instructions, attending and concentrating for 2 hours at a time, interacting on a limited basis with coworkers and supervisors, and responding appropriately to changes in the routine work setting.

6. [t]he claimant is capable of performing past relevant work as a bus driver throughout the period under consideration, and as a real estate agent until September 1, 2009. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. [t]he claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2006, through the date of this decision (20 CFR 404.1520(f)).

Judicial review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992);

Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1983). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1985).

A claimant seeking DIB bears the burden of proving that she is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which... has lasted or can be expected to last for a

5

continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

>   1.  an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
>   2. an individual who does not have a "severe impairment" will not be found to be disabled.
>
>   3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.
>
>   4.  if an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made.
>
>   5.  if an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). In determining whether a claimant

is capable of performing the work that she has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. Villa, 895 F.2d at 1022; Hollis v. Bowen, 837 F.2d 1378, 1386 (5th Cir. 1988); Epps v. Harris, 624 F.2d 1267, 1274 (5th Cir. 1980). The assessment of the demands of the claimant's prior work "... may rest on descriptions of past work as actually performed or as generally performed in the national economy." Villa, 895 F.2d at 1022 (citing Jones v. Bowen, 829 F.2d 524, 527 n. 2 (5th Cir. 1987)). A finding that the claimant is disabled or is not disabled at any point in the five-step review process is conclusive and terminates the Commissioner's analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987), 107 S.Ct. 2287, 2294 n.5 (1987).

As noted earlier, plaintiff challenges the Commissioner's decision to deny DIB on but one ground, namely, that the ALJ rejected the findings of her "treating physician" regarding her functional capacity and substituted his own opinions therefor with no supporting medical testimony. Although the treating physician in question is not identified by name in the memorandum supporting plaintiff's motion for summary judgment, from a review of her statement of uncontested material facts it is clear that the practitioner referred to by plaintiff is Dr. Roderick W. Chandler, Jr. For the reasons that follow and based on the record as it is

presently constituted, the Court harbors significant doubt as to whether Dr. Chandler can properly be characterized as plaintiff's treating physician as that term is used in the Regulations. That concern notwithstanding, the Court believes that the ALJ's assessment of plaintiff's residual functional capacity ("RFC") was properly arrived at and was sufficiently supported by the evidence.

In the course of the administrative proceedings that were held below, plaintiff was asked to provide the Commissioner with a wealth of information, including information about her conditions and their effect, her past work, and the medical treatment that she has received. (Tr. pp. 113-122, 155-157, 163-166, 167, 169). In none of those forms was Dr. Chandler identified as a provider of medical treatment to plaintiff. On April 8, 2010, plaintiff provided the Administration with a list of her medications on which one "Dr. Canderler" was identified as having prescribed Nabumetone to plaintiff in April of 2010. (Tr. p. 170). In correspondence dated April 20, 2010, plaintiff's counsel endeavored to provide the ALJ with the identities of the healthcare providers who had treated her but unfortunately the names of those providers was not included in the letter. (Tr. pp. 171-172).

On April 28, 2010, Dr. Chandler completed a form letter addressed "To Whom It May Concern" that contained six questions susceptible of "Yes" or "No" answers. (Tr. p. 420). Prior to the

first question appears the statement that the symptoms that the doctor was reporting were "[b]ased on my examination(s) and/or treatment of the above mentioned patient/client..." (Id.). Dr. Chandler then answered affirmatively the first question which asked whether plaintiff experienced pain in the knees bilaterally on protracted standing/walking. Below that question is the statement embracing the doctor's finding that plaintiff "...has the residual functional capacity to be a permanent, full-time employee in a position with the following daily requirements without exacerbating her condition or causing her significant pain." Dr. Chandler then provided negative answers to the questions of whether plaintiff could stand or walk for six hours in an eight-hour day, whether she could stand/walk for two hours in an eight-hour day while lifting/carrying up to twenty pounds, and whether she could stand/walk for two hours in an eight-hour day while lifting/carrying up to ten pounds. For the final two questions, the doctor provided affirmative answers to the questions of whether plaintiff could stand/walk for two hours in an eight-hour day and whether she could sit for six hours in an eight-hour day. (Id.).

On May 3, 2010, plaintiff's counsel advised the ALJ via letter that records had been requested from certain healthcare providers but had not yet been received. (Tr. p. 173). Dr. Chandler was not among the doctors identified in that missive.

9

(Id.). On the sixth page of his pre-hearing memorandum, plaintiff's counsel referenced Dr. Chandler's checklist form as constituting the findings of her treating physician and reported that records had been requested from him and would be provided upon their receipt. (Tr. pp. 174-179). Plaintiff updated her list of medications on May 12, 2010, the day of the administrative hearing, and just like the previous list, "Dr. Canderler" continued to be identified as a prescriber of Nabumetone. (Tr. p. 180).

The ALJ issued his written decision denying plaintiff's request for DIB approximately one month later on June 8, 2010. (Tr. pp. 35-55). Addressing Dr. Chandler's checklist form, the ALJ opined as follows:

> [o]n April 28, 2010, Roderick W. Chandler Jr, M.D., provided a checklist form (Exhibit 23F) indicating that the claimant experienced pain in her knees bilaterally on protracted standing/walking; that the claimant could not stand or walk six hours in an eight hour day; she could not stand/walk two hours in an eight hour day while lifting/carrying up to 10 pounds; she could stand/walk two hours in an eight hour day; and, she could sit six hours in an eight hour day. Dr. Chandler failed to explain the medical findings or basis for the above restrictions and none of his treatment records were provided.
>
> \*   \*   \*   \*   \*   \*   \*
>
> Dr. Chandler's one-page opinion (Exhibit 23F) dated April 28, 2010, which indicated that the claimant could sit for 6 hours, and stand/walk two hours in an 8 hour day, but she could not

10

> "stand/walk two hours in an eight hour day while lifting/carrying up to 10 pounds" fails to follow the definitions used by the agency in determining physical limitations. Additionally, this opinion indicates that the "symptom/sign" is that "on protracted standing/walking she experiences a [a.?] pain in the knees bilaterally." Dr. Chandler fails to define "protracted," but since he opines that the claimant is able to stand/walk for two hours, it is logical to infer that "protracted" means more than two hours. There is no evidence to show that the claimant's past relevant work as [a] bus driver involved more than two hours of walking in an eight-hour workday.

> (Tr. pp. 45, 50).

Social Security Regulations define a treating physician as follows:

> [t]reating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need

11

> for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.
>
> 20 C.F.R §404.1502; see also Hernandez v. Astrue, 278 Fed. Appx. 333, 338 n.4 (5th Cir. 2008).

Under the Regulations, the Commissioner gives more weight to the opinions of a source who has examined a claimant than to the opinions of a source who has not and "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. §404.1527(d), (d)(2)(i).

Measured against the foregoing standards, the Court is hard-pressed to characterize Dr. Chandler as a treating physician so as to give controlling weight to the opinions set forth in the "To Whom It May Concern" form letter that he completed. The Court is cited to no examination, treatment, or progress notes from Dr. Chandler from which the number or frequency of plaintiff's visits to him can be gleaned. The form is also unaccompanied by any contemporaneously-recorded, medically acceptable findings and is thus entitled to little weight on that basis alone. Warncke v. Harris, 619 F.2d 412, 417 (5th Cir. 1980). The use of such checklist forms is generally viewed with disfavor among the federal courts of appeals and district courts within the Fifth Circuit when

the forms are not adequately supported by any narrative citations to clinical findings. Haynes v. Astrue, 2012 WL 3860467 at *15-16 (E.D. La. July 23, 2012), adopted, 2012 WL 3863171 (E.D. La. Sept. 5, 2012)(and cases cited therein); Morris v. Astrue, 2010 WL 497748 at *10 (E.D. La. Feb. 1, 2010)(Lemmon, J). In addition to the lack of any supporting findings, the timing of the checklist form in relation to the administrative hearing casts doubt on its evidentiary value. Haynes, 2012 WL 3860467 at *15-16.

Even if Dr. Chandler could properly be characterized as plaintiff's treating physician, the law is clear that the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)(quoting Paul v. Shalala, 29 F.3d 208, 211 (5th Cir. 1994), overruled in part on other grounds by Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080 (2000)). A treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. Newton, 209 F.3d at 456 (citing Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999) and Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984 (1985)). Good cause exists when the treating physician's opinions are so brief and conclusory that they lack persuasive weight, when they are not supported by

13

medically acceptable techniques, or when the evidence supports a different conclusion. Newton, 209 F.3d at 456; Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995); Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987); Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). Just as was the case in Haynes, supra, Dr. Chandler's opinions were voiced shortly before the administrative hearing, were merely check marks on a form, and were not supported by any diagnosis or narrative explanation. Haynes, 2012 WL 3860467 at *16.

Plaintiff additionally argues that the ALJ improperly interjected his own opinions regarding her capabilities for those of Dr. Chandler as set forth in the checklist form by making an assessment of plaintiff's RFC to work. In the Social Security context, RFC is a term of art which embraces a claimant's ability to work despite her physical and/or mental impairments. Hollis, 837 F.2d at 1386-87. An RFC assessment, as opposed to a medical source statement, is an administrative finding of fact. Social Security Ruling 96-8p, 1996 WL 374184 at *2 n. 4. The responsibility for determining a claimant's RFC is reserved to the Commissioner and at the hearing level, that assessment is entrusted to the ALJ. 20 C.F.R. §§404.1527(e)(2), 404.1546(c). As has been recognized by the Fifth Circuit, RFC assessments are not medical opinions at all. Joseph-Jack v. Barnhart, 80 Fed. Appx. 317, 318

(5th Cir. 2003). While an ALJ has a duty to develop the record before him and must make an RFC assessment that is supported by substantial evidence, those duties must be balanced against the fact that the claimant bears the burden of proof through step four of the §404.1520 sequential evaluation. Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007). The lack of a medical source statement about a plaintiff's ability to work does not, in and of itself, make the record incomplete. Gutierrez v. Barnhart, 2005 WL 1994289 at *7 (5th Cir. 2005)(citing Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1985)).

In arriving at his RFC assessment, the ALJ cited various findings of physicians who had evaluated plaintiff during the relevant time period including Drs. Jeffrey Gatz, Patricia Guidry, and George Isa. (Tr. pp. 44-45). With the exception of numerous tender points when plaintiff was examined by Dr. Gatz on January 30, 2008, the results of all of these evaluations were largely unremarkable. (Tr. p. 191). X-rays of the cervical spine taken on October 15, 2009 revealed only mild degenerative findings. (Tr. p. 409). A physical examination that was conducted by Dr. Sumathi Smith on January 12, 2010 was largely normal with the impression being stage I breast cancer that had been diagnosed in 2006 and was at that time simply being monitored. (Tr. pp. 390-393). No limitations were placed on plaintiff's activities throughout this

15

time period, another proper consideration. Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995).

After citing Dr. Chandler's unsupported checklist form, the ALJ turned to the findings of Dr. Felix Rabito who performed a consultation evaluation of plaintiff on July 22, 2009. Upon physical examination, flexion at the knees was full, straight leg raising could be accomplished to 90 degrees bilaterally without radicular pain, and muscle tone, development, range of motion, and strength in the upper extremities was normal. Plaintiff's hand grip was firm bilaterally and there was no muscle atrophy or fasciculations. The back revealed some straightening of the lumbar spine and some resistance to full flexion, extension, and anterior flexion. Plaintiff was able to flex to 45-50 degrees before complaining of tightness and soreness in the lumbosacral area but with no classic radicular pain.

Dr. Rabito's diagnosis was a history of infiltrating ductule carcinoma of the left breast in 2006, treated successfully with lumpectomy, radiation, and chemotherapy, asymptomatic to date; a history of fibromyalgia; a history of degenerative joint disease of the knees; and, a history of chronic anxiety and depression. In the closing portion of his report the doctor remarked that "[t]he physical examination was unremarkable except for some decreased range of motion in the lower back and some difficulty sustaining

balance on heel walking. There were no neurologic or motor abnormalities evident. The applicant appears to be limited most at present by her chronic anxiety and depression and chronic musculoskeletal pain as part of her fibromyalgic syndrome. She appears to be stable physically but in need of psychiatric counseling and support." (Tr. pp. 326-329).

Next, the ALJ discussed plaintiff's treatment for anxiety and depression by Dr. Gatz and the results of a consultative psychological evaluation that was performed by Dr. Girishkumar Shah on September 1, 2009. (Tr. pp. 46-47). The ALJ then returned to the objective medical evidence of plaintiff's low back and knee pain, noting the sporadic nature of her treatment for those conditions as well as that for fibromyalgia which was indicative of only occasional flare-ups. (Tr. pp. 47-48). In light of the consistency of Dr. Rabito's findings with the other medical evidence of record, the ALJ accorded his opinions great weight while finding the opinions set forth in Dr. Chandler's checklist form to be unsupported by the evidence as a whole. (Tr. pp. 49-50).

The ALJ also cited with approval the findings of the Administration's non-examining medical consultants as supportive of his RFC assessment. (Tr. p. 50). On August 7, 2009, Dr. Emily Eisenhauer, an Administration Medical Consultant ("MC"), reviewed

17

plaintiff's file as it was then extant and set forth her findings in a form denominated "Physical Residual Function Capacity Assessment." Relying on various medical reports from Dr. Galouzis, the Porter Valparaiso Hospital, Dr. Drasga, Dr. Gatz, and Dr. Rabito, the MC indicated that plaintiff was capable of medium-level work with no postural, manipulative, visual, communicative, or environmental limitations. (Tr. pp. 374-381). That function-by-function analysis, coupled with the findings of the physicians who had examined plaintiff, including Dr. Rabito, provided sufficient support for the ALJ's RFC assessment. Beck v. Barnhart, 205 Fed. Appx. 207, 213-14 (5th Cir. 2006)(citing Onishea v. Barnhart, 116 Fed. Appx. 1, 2 (5th Cir. 2004)).

Finally, plaintiff argues that the ALJ, faced with the unsupported checklist form from Dr. Chandler, should have recontacted the doctor and requested that he resolve any discrepancies in the form. In Holifield v. Astrue, 402 Fed. Appx. 24, 27 (5th Cir. 2010), the Fifth Circuit opined as follows:

> [t]his court has stated that "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. §404.1512(e)." Newton, 209 F.3d at 453 (emphasis added). Because the record in this

18

> case contains medical opinion evidence from treating physicians-namely, treatment records from Drs. Fong and Culasso-the ALJ had no duty to recontact Dr. Purser.
>
> Id.

Just like the plaintiff in Holifield, because the record in this case contains medical opinion evidence from various treating and examining physicians, the ALJ had no duty to recontact Dr. Chandler.

### **RECOMMENDATION**

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass

v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).

New Orleans, Louisiana, this 17th day of January, 2013.

*(signature)*
ALMA L. CHASEZ
United States Magistrate Judge